NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0161n.06

Case No. 22-1545

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Apr 10, 2023
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| LISA SHERMAN, | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| SPEEDWAY, LLC, a foreign Limited Liability Company, operating in Michigan, | ) |
| Defendant-Appellee. | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

OPINION

Before: SUTTON, Chief Judge; BATCHELDER and MURPHY, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** When Lisa Sherman tripped over the raised edge of a sidewalk slab at a Speedway gas station, she fell and broke her hip. She then sued Speedway, claiming premises liability. Speedway moved for summary judgment, arguing that the uneven sidewalk was open and obvious, and the district court agreed.

When the district court grants summary judgment, our review is de novo. *Goodman v. J.P. Morgan Inv. Mgmt., Inc.*, 954 F.3d 852, 859 (6th Cir. 2020). Because this was a Michigan state-law action that was removed to federal court pursuant to diversity jurisdiction, 28 U.S.C. §§ 1332 & 1441, Michigan law governs. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Michigan "law has long stated that [a] minor differential height difference in sidewalks is not unexpected." *Becker v. Enter. Leasing Co. of Detroit LLC*, 2021 WL 4238280, at *2 (Mich. Ct. App. Sept. 16, 2021) (per curiam) (citing *Weakley v City of Dearborn Heights*, 612 N.W.2d 428, 431 (Mich. Ct. App. 2000)). "Sidewalks with slight height differentials between the cement slabs are fairly common and the condition is readily avoided by simply stepping over or around the slight elevation." *Ricevuto v. Washtenaw Ave. Bookstore, L.L.C.*, 2010 WL 3239103, at *2

(Mich. Ct. App. Aug. 17, 2010) (citing *Lugo v. Ameritech Corp.*, 629 N.W.2d 384, 387 (Mich. 2001)). "[L]ike ordinary steps and potholes, deteriorating sidewalk joints and various imperfections in a concrete walking surface are ordinary features that people frequently encounter during the course of their everyday lives and that can be easily observed by a reasonably prudent person." *Dorsey v. Taubman Auburn Hills Assocs.*, 2017 WL 1367162, at *3 (Mich. Ct. App. Apr. 13, 2017) (per curiam) (first citing *Lugo*, 629 N.W.2d at 389-90, then citing *Bertrand v. Alan Ford, Inc.*, 537 N.W.2d 185, 189-90 (Mich. 1995)); *see also Metzler v. GSM Am., Inc.*, 2017 WL 461607 (Mich. Ct. App. Feb. 2, 2017) (per curiam); *Solano v. Standard Fed. Bank*, 2003 WL 462407 (Mich. Ct. App. Feb. 21, 2003) (per curiam); *Walker v. Int'l Manor, Inc.*, 2001 WL 1004274 (Mich. Ct. App. Aug. 31, 2001) (per curiam). Each of these cases concluded that uneven sidewalk slabs are commonplace and pose no hidden danger. But at least one Michigan case holds otherwise. *See Siorakes v. Target Corp.*, 2011 WL 1564616, at *3 (Mich. Ct. App. Apr. 26, 2011) ("We conclude that reasonable minds viewing the photographs could differ with respect to whether the area of sidewalk discontinuity qualified as open and obvious to a reasonable invitee on casual inspection."). In this light, we analyze Sherman's claim.

Under Michigan law, a business "owes a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions" on the property, but "owes no duty to protect or warn of dangers that are *open and obvious* because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Hoffner v. Lanctoe*, 821 N.W.2d 88, 94 (Mich. 2012) (footnote omitted; emphasis added) (quoting *Riddle v. McLouth Steel Prods. Corp.*, 485 N.W.2d 676, 681 (Mich. 1992)); *accord Est. of Livings v. Sage's Inv. Grp., LLC*, 968 N.W.2d 397, 402 (Mich. 2021).

"[A] danger is open and obvious" if "an average person with ordinary intelligence would have discovered it upon casual inspection." *Hoffner*, 821 N.W.2d at 94-95 (footnote citation

omitted). Two related aspects of this test warrant mention. One, "[t]his is an *objective standard*, calling for an examination of 'the objective nature of the condition of the premises.'" *Id.* at 95 (footnote omitted) (quoting *Lugo*, 629 N.W.2d at 390). And two, but for the "special aspects exception" (discussed below), this is a legal determination for the court, not a finding of fact for the jury. *Id.* at 103 ("Because the issue of the openness and obviousness of a hazard is an 'integral part' of the question of *duty*, establishing whether a duty exists in light of the open and obvious nature of a hazard is an issue within the province of the court." (footnote omitted)); *accord Jeffrey-Moise v. Williamsburg Towne Houses Coop., Inc.*, 971 N.W.2d 716, 727 & n.3 (Mich. Ct. App. 2021) ("[T]he application of the open and obvious danger doctrine is part of the question of duty that is a question of law for the court to decide.") (citing *Buhalis v. Trinity Continuing Care Servs.*, 822 N.W.2d 254, 258-59 (Mich. Ct. App. 2012)).

In this appeal, Sherman contends that genuine issues of material fact invalidate the grant of summary judgment to Speedway. But the only so-called "fact" that she disputes is the court's legal determination that any danger posed by Speedway's uneven sidewalk was open and obvious. Specifically, she contends that the jointly submitted photos (19 in all), whether viewed altogether or individually,[1] do not show what they show; that the testimony does not say what it says; and

---

[1] Sherman accuses the district court of improperly relying on one photo ("Joint Exhibit 2"), which she contends is not representative, to the exclusion of the other photos, which she contends are far more representative (e.g., "Joint Exhibit 3"). On a de novo review of the photos, we do not agree that Photo 3 is more representative than Photo 2 or necessarily leads to a different result. More importantly, the district court, which ruled from the bench at the completion of the motion hearing, announced in open court: "I find this [Photo 2] the most valuable exhibit to my analysis, *although I reviewed all of them*." The court then explained its decision.

This begs the question of why Sherman did not object or raise her present claim to the district court. Had Sherman done so, the court might have undertaken an alternative or additional analysis based on Photo 3. Or, Speedway might have countered that Photo 3 was not representative—it was taken from further away (about 20 to 25 feet away, rather than five feet away), using a camera that created an image with a far more dramatic contrast between shadow and sunlight. Either way, the point is that Sherman did not challenge the district court on this issue.

Thus, even if we agreed with Sherman's characterization of the photos and the district court's use of them— which we do not—she forfeited this claim by failing to timely raise it to the district court. "[T]he forfeiture rule tells us to correct errors raised and addressed below, not to entertain new claims raised for the first time on appeal." *Puskas v. Delaware Cnty.*, 56 F.4th 1088, 1098 (6th Cir. 2023) (editorial marks and citation omitted).

that her two proffered experts were indispensable (more on this in a moment). Contrary to Sherman's contentions, this was an ordinary sidewalk with a commonly occurring height differential (of 7/8 inch) between two of the slabs, where she tripped. There are no underlying facts in dispute. Moreover, "an average person with ordinary intelligence would have discovered [this section of uneven sidewalk] upon casual inspection." *See Hoffner*, 821 N.W.2d at 94-95 (footnote omitted). The record photos and testimony fully support this assessment of the objective conditions.

Sherman, however, believes that the task of assessing an ordinary sidewalk—to decide whether the danger posed by two uneven slabs is "open and obvious" or "hidden"—is beyond the ability of a judge (or juror), and therefore requires an expert's analysis, report, and testimony. *See* Fed. R. Evid. 702(a) (allowing for expert evidence that will assist the fact-finder in understanding the facts and circumstances of these events in an environment which is beyond the common knowledge of a lay person); *see also United States v. Thomas*, 74 F.3d 676, 684 n.6 (6th Cir. 1996) (holding that expert evidence is improper when it "addresses matters within the understanding or common knowledge of the average juror or invades the province of jury") (abrogated on other grounds by *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997)).

So, Sherman retained and proffered two experts: one to opine that the uneven sidewalk slab "is not readily apparent to an ordinary pedestrian upon casual inspection traversing the sidewalk," and the other to opine that "[a] sidewalk should have an even surface or profile," based on the Americans with Disabilities Act, the Michigan Rehabilitation Code, and their respective guidelines, along with other codes and guidelines. The district court rejected this expert testimony as unnecessary, explaining that: "Everyone who has ever walked on a sidewalk . . . has experienced encountering adjoining cement sidewalk slabs with differing heights."

As a general matter, it would be difficult to refute the district court's practical point. It would be extraordinary to find an ambulatory adult person who has never walked on an uneven sidewalk and is therefore baffled by the prospect of assessing whether the raised edge between two slabs is open and obvious. Moreover, the particular test for an open and obvious danger, *see Hoffner*, 821 N.W.2d at 94-95 (whether "an average person with ordinary intelligence would have discovered it upon casual inspection" (footnote citation omitted)), leaves little room for expert evidence even if it does not bar it outright. Although hard to imagine, there might exist circumstances so unique or unusual that either a judge or "an average person with ordinary intelligence" could not perform a "casual inspection" and reach a conclusion. But that is not this case. If expert evidence were warranted in this case, then expert evidence would be warranted in every case involving a claim that the danger from an uneven sidewalk was open and obvious. That is contrary to common sense, Rule 702(a), and its associated case law. *See*, *e.g.*, *Meemic Ins. Co. v. Hewlett-Packard Co.*, 717 F. Supp. 2d 752, 767 (E.D. Mich. 2010) ("[The expert]'s visual examination and conclusion that the damage on the AC power adapter was much more severe than anything else, is certainly a matter within the understanding or common knowledge of the average juror and invades the province of jury." (quotation marks and editorial brackets omitted)). Given that the ultimate question of whether an uneven sidewalk is open and obvious is a legal issue for the court to decide, an expert's conclusion on that question similarly invades the province of the judge. *See Berry v. City of Detroit*, 25 F.3d 1342, 1353-54 (6th Cir. 1994).

Returning to the present analysis, there exists "a limited exception to the circumscribed duty owed for open and obvious hazards, [by which] liability may arise when *special aspects* of a condition make even an open and obvious risk unreasonable." *Hoffner*, 821 N.W.2d at 95.

> This [Michigan Supreme] Court has discussed two instances in which the special aspects of an open and obvious hazard could give rise to liability: when the danger is *unreasonably dangerous* or when the danger is *effectively unavoidable*. In either

circumstance, such dangers are those that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided and thus must be differentiated from those risks posed by ordinary conditions or typical open and obvious hazards.

*Id.* at 96 (certain emphasis, quotation marks, and footnote citation omitted).

In *Hoffner*, the court explained that "a plaintiff who is injured by the [otherwise open and obvious] condition may avoid summary disposition only if there are special aspects to the condition." *Id.* at 97 (footnote omitted). "[I]t is only when an open and obvious hazard is in some manner *unreasonable* that there is a question of fact for the jury. And . . . unreasonableness is the touchstone of the 'special aspects' test." *Id.* at 103 (footnote omitted).

Sherman says this area of Speedway's sidewalk satisfies the "special aspects" exception of an "effectively unavoidable" danger. Because the store was under renovation and the permanent restrooms were out of service, Speedway set port-a-potties outside for customer use. Because this sidewalk was the most direct route to those outside port-a-potties, Sherman contends that the danger posed by the portion of uneven sidewalk where she tripped was "effectively unavoidable."

We cannot agree. Not only is this small portion of uneven sidewalk easily avoidable by stepping over or around it, but, by all evidence in the record, it has been universally and flawlessly avoided by every other person to ever encounter it. There is no evidence that anyone else has ever tripped on this uneven bit of sidewalk. Moreover, the *Hoffner* Court was emphatic that "the standard for 'effective unavoidability' is that a person, for all practical purposes, must be *required* or *compelled* to confront a dangerous hazard. As a parallel conclusion, situations in which a person has a *choice* whether to confront a hazard cannot truly be unavoidable, or even effectively so." *Id.* at 99. Sherman comes nowhere close to meeting this standard.

Alternatively, Sherman claims that this uneven section of sidewalk violates Michigan's Stille-Derosett-Hale Single State Construction Code Act, M.C.L. § 125.1513g, which requires that any renovation or repair to a building must provide disabled persons with an accessible route to

the restroom. From this, Sherman contends that—even though she is not disabled—this alleged statutory violation renders the open-and-obvious doctrine inapplicable (or invalid under the circumstances), thereby allowing her premises liability claim to proceed. She relies on *Wilson v. BRK, Inc.*, 938 N.W.2d 761, 767 (Mich. Ct. App. 2019) ("The open and obvious danger doctrine cannot be used to avoid a specific statutory duty." (quotation marks and citations omitted)).

Speedway answers that the uneven sidewalk does not violate M.C.L. § 125.1513g, inasmuch as that statute does not apply to its circumstances. But, more importantly, neither M.C.L. § 125.1513g nor the Americans with Disabilities Act (ADA) imposes any duty on Speedway with regard to Sherman, who is not disabled. And Sherman concedes that she did not, and could not, sue Speedway under the ADA. Moreover, Sherman points to nothing to suggest that M.C.L. § 125.1513g creates a private right of action. *See Wilson*, 938 N.W.2d at 769, 772 (explaining that the statutory duty trumps the common law open-and-obvious limitation only when the statute both creates a duty to the particular plaintiff and has a private right of action and remedy). Regardless of whether this uneven pavement violates M.C.L. § 125.1513g, this legal premise is irrelevant and this argument is baseless.

For the foregoing reasons, we AFFIRM the judgment of the district court.